**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- X

ORLANDO GARCIA GIL, GUSTAVO MARTINEZ,

                Plaintiffs,

       -vs-                              Case No.: 1:18-cv-10657 (VEC)

DANNY BENSUSAN, STEVE BENSUSAN,
GREENWICH VILLAGE ENTERTAINMENT
GROUP LLC,

                Defendants.

---------------------------------------------------------------- X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO COMPEL
## ARBITRATION AND STAY THE ACTION

HOGAN LOVELLS US LLP
    Attorneys for DANNY BENSUSAN,
    STEVE BENSUSAN and
    GREENWICH VILLAGE
    ENTERTAINMENT GROUP
390 Madison Avenue
New York, NY 10017
212-918-3000

*Of Counsel*:
  Kenneth Kirschner

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 1

ARGUMENT .............................................................................................................. 5

I.    THE COURT SHOULD COMPEL THIS MATTER IN ITS ENTIRETY TO ARBITRATION .................................................................... 5

II.   THE SCOPE OF DEMAND FOR ARBITRATION IS ENCOMPASSED BY THE CONSENT TO ARBITRATION ................................................... 7

    A.    By Its Own Terms, the Consent to Arbitration Applies to Plaintiffs' Claims ................................................................. 7

    B.    Consent to Arbitration Applies to Non-Signatories .................................... 9

III.  IN ANY EVENT, WHETHER THE CONSENT TO ARBITRATION APPLIES TO THE PLAINTIFFS IS A QUESTION FOR THE ARBITRATOR ............... 12

IV.   THE COURT SHOULD STAY THIS ACTION ................................................. 15

CONCLUSION ........................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*AT&T Mobility LLC v. Conception*,
   563 U.S. 333 (2011)......................................................................................8, 12, 15

*Bakon v. Rushmore Serv. Ctr.*,
   2017 WL 2414639 (E.D.N.Y. 2017)..................................................................5, 8

*Beautyko, LLC v. FedEx Ground Package Sys.*,
   2015 WL 224361 (S.D.N.Y. 2015)........................................................................6

*Beletsis v. Credit Suisse First Boston, Corp.*,
   2002 WL 2031610 (S.D.N.Y. 2002)......................................................................7

*Bell v. Cendant Corp.*,
   293 F.3d 563 (2d Cir. 2002)...........................................................................6, 13

*Brecher v. Midland Credit Mgmt., Inc.*,
   2019 WL 1171476 (E.D.N.Y. 2019)..................................................................5, 8

*Chanchani v. Salomon/Smith Barney, Inc.*,
   2001 WL 204214 (S.D.N.Y. 2001) .......................................................................7

*Collins & Aikman Products Co. v. Building Sys, Inc.*,
   58 F.3d 16 (2d Cir. 1995) ....................................................................................8

*Contec Corp. v. Remote Solution Co.*,
   398 F.3d 205 (2d Cir. 2005)..........................................................................10, 14

*Crawford v. Merill Lynch, Pierce, Fenner & Smith, Inc.*,
   35 N.Y. 2d 291 (1974) .........................................................................................6

*Daly v. Citigroup Inc.*,
   2018 WL 741414 (S.D.N.Y. 2018), *appeal docketed*, No. 18-665 (2d Cir.
   March 9, 2018)..................................................................................................5, 8

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...........................................................................................13

*Dhue v. O'Reilly*,
   No. 1:18-cv-2547 (DAB) (S.D.N.Y. October 10, 2018).....................................9, 11

*Dixon v. NBC Universal Media, LLC*,
   947 F.Supp.2d 390 (S.D.N.Y. 2013).....................................................................7

*Duran v. J. Hass Grp., L.L.C.*,
   531 F. App'x 146 (2d Cir. 2013) ........................................................................12

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ......................................................................................8

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)......................................................................................6, 13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987).................................................................................5

*Gonzalez v. Toscorp Inc.*,
  1999 WL 595632 (S.D.N.Y. 1999).....................................................................5, 7

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003).........................................................................................12

*Hartford Acc. & Indem. Co. v. Swiss Reins. Am. Corp.*,
  246 F. 3d 219 (2d Cir. 2001)................................................................................5

*Henry Schein Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).............................................................................12, 13, 14

*Hirschfeld Prods., Inc. v. Mirvish*,
  88 N.Y.2d 1054 (1996) .....................................................................................10

*Holick v. Cellular Sales of N.Y., LLC*,
  802 F.3d 391 (2d Cir. 2015).................................................................................8

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015)...............................................................................15

*Koob v. IDS Fin. Servs., Inc.*,
  629 N.Y.S.2d 426 (1st Dep't 1995) ....................................................................15

*Lowry v. JPMorgan Chase Bank, N.A.*,
  522 F. App'x 281 (6th Cir. 2013) .......................................................................13

*Manigault v. Macy's East, LLC*,
  2009 WL 765006 (2d Cir. 2009).........................................................................6

*McAllister Bros., Inc. v. A & S Transp. Co.*,
  621 F.2d 519 (2d Cir. 1980) ..............................................................................10

*McMahan Sec. Co. L.P. v. Forum Cap. Mkts. L.P.*,
  35 F.3d 82 (2d Cir. 1994) ..................................................................................15

*Merrill Lynch Intl. Fin., Inc. v. Donaldson*,
  27 Misc. 3d 391 (Sup. Ct. N.Y. Cty. 2010) ........................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................................5, 8

*Nat'l City Gof Fin. v. Higher Ground Country Club Mgmt. Co., LLC*,
  641 F.Supp.2d 196 (S.D.N.Y. 2009)......................................................................6

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Seneca Family of Agencies*,
  255 F. Supp. 3d 480 (S.D.N.Y. 2017)......................................................................5

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*,
  88 F.3d 129 (2d Cir.1996)........................................................................................5

*Ragone v. Atlantic Video*,
  595 F.3d 115 (2d Cir. 2010)..................................................................................11

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010)...............................................................................12, 13, 14

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l. Inc.*,
  198 F.3d 88 (2d Cir. 1999).....................................................................................10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)................................................................................................8

*T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F 3d. 329 (2d Cir. 2010)................................................................................14

*Tantaros v. Fox News Network, LLC, et al.*,
  Index No. 157054/2016 (Sup. Ct. N.Y. Cty. February 15, 2017)...........................11

**Statutes**

9 U.S.C. §§ 1-14 ..............................................................................5, 12, 13, 15

9 U.S.C. § 2...............................................................................................................5

9 U.S.C. § 3............................................................................................................15

N.Y. C.P.L.R. § 7501 (McKinney)............................................................................6

N.Y. C.P.L.R. § 7503(a) (McKinney) .....................................................................15

**Other Authorities**

AAA Employment Arbitration Rules and Mediation Procedures (available at
  www.adr.org) (last visited May 29, 2019) ...................................................2, 13, 14

*Siegel, Prac. Comments,* McKinney's Cons Laws of NY, Book 7B, CPLR
  C3211:21.................................................................................................................15

## PRELIMINARY STATEMENT

Despite the fact that Plaintiffs Orlando Garcia Gil and Gustavo Martinez ("Plaintiffs") were subject to binding written arbitration language containing a delegation provision pursuant to the Employment Arbitration Rules and Mediation Procedures ("Rules") of the American Arbitration Association ("AAA"), agreeing to submit "all claims" to arbitration, including those under the Fair Labor Standards Act ("FLSA") and any applicable state laws, Plaintiffs initiated the instant Complaint against Danny Bensusan, Steve Bensusan, and Greenwich Village Entertainment Group LLC ("Defendants").  As a result of the express arbitration agreements, the Court should stay these proceedings and compel the Plaintiffs to arbitrate their claims.  If the Plaintiffs claim the disputes are not arbitrable, under settled Supreme Court law, the arbitrator, not the Court, should decide such questions due to the express delegation provision requiring the arbitrator to decide his or her jurisdiction and whether the matter is arbitrable.

Accordingly, Defendants respectfully request that the Court compel this case to arbitration and stay these proceedings pending arbitration of the claims.

## STATEMENT OF FACTS

Defendant Greenwich Village Entertainment Group LLC owned and operated a concert venue and nightclub, known as Highline Ballroom, which as of February 2019 has closed operations and is no longer in existence. Bensusan Aff. ¶ 1, 10.[1]  Plaintiffs Gil and Martinez were employed as porters by Defendant Greenwich Village Entertainment Group LLC up and until July 15, 2018. Compl. ¶¶ 6, 35-36.[2] Every employee of Greenwich Village Entertainment

---

[1] Defendants affix hereto the affidavit of Steven Bensusan, dated May 31, 2019, ("Bensusan Affidavit"). The numbers after the "¶" refer to the paragraphs in the Bensusan affidavit.

[2] The Complaint is affixed hereto as Exhibit A to the Declaration of Kenneth Kirschner, Esq., dated May 31, 2019. The numbers after "Compl. ¶" refer to the paragraphs of the Complaint.

Group LLC, including both Plaintiff Gil and Martinez, was provided an Employee Handbook and Consent to Arbitration, and would have been provided another at any time if the employee asked. Bensusan Affidavit ¶ 4, 5, Ex. A at p. 14-15.  In accordance with Highline Ballroom policy, and as a condition of continued employment, all employees of Greenwich Village Entertainment Group LLC were required to sign an Acknowledgment of Receipt of Employee Handbook and Consent to Arbitration ("Acknowledgment"). Bensusan Affidavit ¶3. The Consent to Arbitration establishes a mandatory arbitration procedure for all "employment claims," including wage claims brought under the FLSA and state and local laws. Bensusan Affidavit ¶ 5, Ex. A at p. 14-15. The signed Acknowledgments were kept in the ordinary course of business in the employee's personnel files. Bensusan Affidavit ¶ 8.

Plaintiffs' Complaint omits any mention of the Consent to Arbitration and the Acknowledgement where each Plaintiff agreed to submit these claims to arbitration.  The Acknowledgment states:

> I further acknowledge that I received and read the Consent to Arbitration which is found in this Handbook, and I knowingly and voluntarily agree to the obligations set forth therein.

Bensusan Affidavit ¶ 5, Ex. A at p. 6.

Plaintiff Gil's Acknowledgment is attached to the affidavit of Steven Bensusan ¶ 9, Ex. B and C. The Consent to Arbitration in the Handbook specifically provides for final and binding arbitration pursuant to the AAA Rules. It reads:

### CONSENT TO ARBITRATION

> In consideration of Employee's employment and/or continued employment with the Company, Employee and the Company agree to arbitrate all claims that Employee or the Company now or hereafter may have in connection with Employee's employment with the Company, including, but not limited to, those described below.

2

Employee and the Company will submit to binding, final and exclusive arbitration before an impartial arbitrator experienced in employment matters jointly selected by the parties pursuant to the Employment Arbitration Rules and Mediation Procedures ("Rules") of the American Arbitration Association ("AAA"). This mutual obligation to arbitrate means that Employee and the Company agree to submit all claims, including, but not limited to, any employment claims (as defined below), defamation claims, wage, bonus or benefit claims, wrongful or unlawful discharge claims, contract, tort or common law claims, harassment or discrimination claims, or claims for stock or stock options, that Employee now or hereafter may have arising out of or relating to Employee's hiring, Employee's employment, a term or condition of Employee's employment, or any termination of Employee's employment. This mutual agreement to arbitrate will not preclude Employee from pursuing any substantive statutory rights or legal remedies to which he may be entitled. This mutual agreement to arbitrate merely designates the forum in which all employment claims, by Employee or The Company, must be heard.

For purposes of this Consent to Arbitration, the term "employment claims," as used herein, includes any federal, state, or local laws arising under the Civil Rights Acts of 1866, 1870 and 1871, the Equal Pay Act of 1963, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), the Older Worker Benefits Protection Act ("OWBPA"), the Civil Rights Act of 1968, the Rehabilitation Act of 1973, the Vietnam-Era Veterans' Readjustment Assistance Act of 1974, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), the Immigration Reform and Control Act, the American with Disabilities Act of 1990 ("ADA"), the Employee Retirement Income Securities Act (ERISA), the Civil Rights Act of 1991, the Family and Medical Leave Act ("FMLA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Worker Adjustment and Retraining Notification ("WARN") Act, the Fair Labor Standards Act ("FLSA"), the Sarbanes-Oxley Act, and any applicable federal, state or local anti-discrimination, equal employment opportunity, wage or protective labor statutes, regulations or laws.

**THIS MUTUAL OBLIGATION TO ARBITRATE MEANS THAT EMPLOYEE AND THE COMPANY ARE VOLUNTARILY GIVING UP THE OPPORTUNITY TO HAVE A JUDGE OR JURY DETERMINE ANY SUCH DISPUTES IN A FORMAL PROCEEDING.** Employee and the Company are nonetheless agreeing to arbitrate such claims in the hope of obtaining, through arbitration, a speedier resolution of any such dispute, with greater economy, simplicity and informality.

This Consent to Arbitration does not preclude Employee from filing an administrative complaint or charge with an administrative or regulatory agency such as the Equal Employment Opportunity Commission or the Department of Labor, but Employee acknowledges that he is not entitled to any other monies than those awarded by an arbitrator pursuant to this Consent to Arbitration.

If Employee brings a claim to arbitration, Employee agrees to pay all filing fees associated with the arbitration up to and including those amounts that would be required

to commence a judicial proceeding in state or federal court. The Company will pay any administrative or hearing fees charged by the arbitrator or the AAA.

Employee and the Company agree that the arbitrator will be required to administer the arbitration pursuant to the Rules of the AAA and issue an award, in writing, containing a summary of the issues in controversy, and a description of the award issued. Employee and the Company agree that the arbitrator may award damages, and/or other relief, only to the extent then permitted under an applicable federal, state or local statutes. The arbitrator shall have no authority to amend or modify this Consent to Arbitration or abridge or enlarge the procedural or substantive rights of the parties.

**Employee and The Company agree that the arbitrator selected pursuant to this Agreement shall hear individual claims and is not permitted to consolidate claims of different employees or hear any class or collective action claims. THIS MEANS THAT EMPLOYEE IS VOLUNTARILY WAIVING HIS OR HER RIGHT TO PARTICIPATE IN A CLASS OR COLLECTIVE ACTION WITH REGARD TO ANY CLAIMS COVERED BY THIS AGREEMENT.**

Notwithstanding anything to the contrary in the Rules or the AAA's Code of Conduct for impartial arbitrators, the arbitrator may attempt to mediate the case or the parties may jointly agree to seek private mediation before or during the arbitration.

This Consent to Arbitration shall be governed by the laws of New York. If any provision of this Consent to Arbitration is found by any court or arbitrator to be invalid or unenforceable, such decision or order shall not affect, impair or invalidate the remaining provisions. This agreement does not, however, extend or waive any statutes of limitations or other provisions of law that specify the time within which any claim must be brought.

Employee understands that this Consent to Arbitrate is not a contract of employment between Employee and the Company and does not establish either the duration or the terms and conditions of any employment by the Company of Employee. Employee further understands that this Consent to Arbitration does not require the Company to continue Employee's employment or retain Employee in any particular position.

By signing the Acknowledgment of Receipt of Employee Handbook and Consent to Arbitration, Employee and The Company acknowledge that they have read this Consent to Arbitration and knowingly and voluntarily agree to the obligations set forth herein.

Bensusan Affidavit ¶ 5, Ex. A at p. 14-15.

Rather than abide by the Consent to Arbitration, Plaintiffs filed their Complaint directly in court. The Complaint alleges violations of New York and federal law that all arise under the covered statues in the Consent to Arbitration. Kirschner Decl. ¶3, Ex. A.

4

## <u>ARGUMENT</u>

### I.   THE COURT SHOULD COMPEL THIS MATTER IN ITS ENTIRETY TO ARBITRATION

In considering a motion to compel arbitration under the Federal Arbitration Act ("FAA"), courts must answer two questions: (1) whether there exists a valid agreement to arbitrate, and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *Hartford Acc. & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F. 3d 219, 226 (2d Cir. 2001); *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir.1996); *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 488 (S.D.N.Y. 2017).  Pursuant to the FAA—which establishes a presumption of arbitrability and which governs the Consent to Arbitration here — "an agreement *in writing* to submit to arbitration … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26 (1983) (noting the FAA applies to suits initiated in state as well as in federal court, and serves as "a congressional declaration of a liberal federal policy favoring arbitration agreements"); *Daly v. Citigroup Inc.*, 2018 WL 741414, at *2 (S.D.N.Y. 2018), *appeal docketed*, No. 18-665 (2d Cir. March 9, 2018).

To be valid, the FAA requires that the arbitration agreement be in writing, however, it does not require that the writing be signed by the parties. 9 U.S.C. §2; *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature."); *Brecher v. Midland Credit Mgmt., Inc.*, 2019 WL 1171476, at *5 (E.D.N.Y. 2019); *Bakon v. Rushmore Serv. Ctr.*, 2017 WL 2414639, at *3 (E.D.N.Y. 2017) ("While the FAA mandates that arbitration agreements be in writing, it does not require that they be signed."); *Gonzalez v. Toscorp Inc.*, 1999 WL 595632, at

5

*2 (S.D.N.Y. 1999) (same).  New York law – which also governs the Consent to Arbitration –

"simply requires 'a written agreement' to arbitrate;" it also imposes no requirement that the

writing be signed, so long as the parties have otherwise manifested their assent. *Crawford v.*

*Merill Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y. 2d 291, 299 (1974); *see also* N.Y. C.P.L.R.

§ 7501 (McKinney); *Beautyko, LLC v. FedEx Ground Package Sys.*, 2015 WL 224361, at *3

(S.D.N.Y. 2015) ("New York's arbitration statute requires only a written agreement – not a

signed, written agreement"); *Nat'l City Gof Fin. v. Higher Ground Country Club Mgmt. Co.,*

*LLC*, 641 F.Supp.2d 196, 203 (S.D.N.Y. 2009) (same).  Generally, to determine whether an

agreement to arbitrate was formed, courts must "apply ordinary state-law principles that govern

the formation of contracts." *Manigault v. Macy's East, LLC,* 2009 WL 765006, at **1 (2d Cir.

2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Bell v.*

*Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

     Here, and as a condition of employment, all employees of Greenwich Village

Entertainment Group LLC were given an Employee Handbook, including the Consent to

Arbitration, and were required to sign an Acknowledgment. Bensusan Aff. ¶ 3, 4. Plaintiff Gil

signed such Acknowledgment, assenting to the terms of arbitration, and it is annexed hereto as

Exhibit B and C to the affidavit of Steven Bensusan. Bensusan Aff. ¶ 9, Ex. B and C.  As a result

of the closing of Highline Ballroom, many employee personnel records are not available.

Bensusan Aff. ¶ 10. Plaintiff Martinez's signed Acknowledgment is among those records, and

therefore cannot be produced at this time. *Id*.  However, even if the Plaintiffs did not sign the

Acknowledgment, which they did, courts have found that an employee's continued employment

with an employer, after receiving notice of such a policy and arbitration agreement, manifests an

employee's assent to such agreement. *Manigault,* 2009 WL 765006, at **2 ("New York, unlike

other jurisdictions … has found that continued employment, without more, is sufficient to manifest assent").

Under New York law, a contract may be formed by words or conduct that demonstrates the party's mutual assent. *Id*. When an arbitration agreement is a condition of employment, as it is here, an employee will be deemed to have accepted the arbitration agreement when he or she continues to work after the promulgation of the arbitration policy. *Beletsis v. Credit Suisse First Boston, Corp.*, 2002 WL 2031610, at *3 (S.D.N.Y. 2002); *see also Dixon v. NBC Universal Media, LLC,* 947 F.Supp.2d 390, 400 (S.D.N.Y. 2013); *Chanchani v. Salomon/Smith Barney, Inc.,* 2001 WL 204214, at *3 (S.D.N.Y. 2001) (holding that the plaintiffs are bound by the arbitration provisions in the employee handbook, even if they did not sign a receipt form, because the plaintiffs continued to work after promulgation of the handbook, and never informed employer that they rejected its terms); *Gonzalez*, 1999 WL 595632, at *2 (holding the plaintiff was subject to the company's arbitration policy, distributed to employees along with the employee handbook, despite the fact that the plaintiff did not sign the required receipt form because the plaintiff assumed the obligation to arbitrate when he continued his employment with the company). Here, both Plaintiffs received the Consent to Arbitration. Bensusan Affidavit ¶ 3, 4. Moreover, Plaintiffs continued to work after receiving the Consent to Arbitration. Plaintiffs therefore assented to arbitration not only through their signatures, but also by continuing with their employment. As such, the Plaintiffs are bound by the provisions of the Consent to Arbitration.

## II.      THE SCOPE OF DEMAND FOR ARBITRATION IS ENCOMPASSED BY THE CONSENT TO ARBITRATION

### A.      By Its Own Terms, the Consent to Arbitration Applies to Plaintiffs' Claims

"It is axiomatic that '[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control.'" *Holick v. Cellular Sales of N.Y., LLC,* 802 F.3d 391, 395 (2d Cir. 2015) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682 (2010)). Here, the plain text of the Consent to Arbitration shows that "all claims," including FLSA and New York Labor Law ("NYLL") violations, should be sent to "binding, final and exclusive arbitration." Bensusan Affidavit ¶ 5, Ex. A at p. 14-15. This includes each and every one of Plaintiffs' causes of action, which are all brought under the covered statutes: (1) alleged unpaid overtime wages in violation of the FLSA; (2) alleged unpaid overtime wages in violation of the NYLL; (3) alleged failure to comply with wage notification requirements in violation of the NYLL; (4) alleged failure to comply with wage statement requirements in violation of the NYLL. Compl. ¶¶ 39-55. Thus, a plain reading of the Consent to Arbitration supports arbitration of these claims.

Moreover, the "FAA 'embod[ies] [a] national policy favoring arbitration and a liberal federal policy favoring arbitration agreements'" binding on both state and federal courts. *Brecher*, 2019 WL 1171476, at *2 (quoting *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 346 (2011)); *see also Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24 ("Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements."); *Bakon*, 2017 WL 2414639, at *2. Accordingly, federal policy requires courts to construe arbitration clauses as broadly as possible and to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Daly*, 2018 WL 741414, at *2 (quoting *Collins & Aikman Products Co. v. Building Sys, Inc.*, 58 F.3d 16, 19 (2d

Cir. 1995)). That presumption applies with heightened force where, as here, the case involves a broad arbitration clause to "submit all claims" to "final, binding, and exclusive" arbitration. Bensusan Affidavit ¶ 5, Ex. A at p. 14-15. In accordance with the above, the Court should enforce the Consent to Arbitration as valid and applicable to Plaintiffs' claims.

### B.      Consent to Arbitration Applies to Non-Signatories

There is no question that Greenwich Village Entertainment Group LLC and Plaintiffs are subject to the arbitration agreement.  Plaintiffs may attempt to evade arbitration by claiming the remaining Defendants are not signatories to the Consent to Arbitration.  However, such an argument would be unavailing. A plain reading of the Consent to Arbitration clearly notes that both Plaintiffs have agreed to arbitrate all claims that they "now or hereafter may have in connection with Employee's employment with the Company…." Bensusan Affidavit ¶ 5, Ex. A at p. 14-15. The disputes alleged in Plaintiffs' Complaint undoubtedly relate to Plaintiffs' employment. Further, due to the individual Defendants close relationship with Highline Ballroom, the Plaintiffs should be bound by the terms of the Consent to Arbitration and compelled to arbitrate their claims in the AAA arbitral forum.

In *Dhue v. O'Reilly*, No. 1:18-cv-2547 (DAB) (S.D.N.Y. October 10, 2018) (Memorandum & Order), the court was confronted with a motion to compel arbitration even though the litigants were not both signatories to an arbitration agreement.  There, defendant William O'Reilly, who worked for Fox News, was able to compel arbitration due to Fox News' arbitration agreement which contained a delegation clause.  The court held:

> Plaintiff argues that Defendant O'Reilly cannot avail himself of the Settlement Agreement's arbitration clause both because he is not a party to the contract and because the defamation action is not a "similar dispute" sufficient to estop Plaintiff from denying her obligation to arbitrate.  Both arguments fail.  This Court HOLDS that Plaintiff, a signatory to the Settlement Agreement, is estopped from avoiding arbitration with Defendant, a non-signatory, because the Parties and the Defendant "have a sufficient

relationship to each other and to the rights created under the agreement." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005).

> In the alternate she argues that even if Defendant could avail himself of the arbitration clauses, this dispute falls outside the scope of the agreement and thus is not subject to arbitration.  We do not reach the merits of this argument.  We instead conclude that the threshold question, whether Plaintiff agreed to arbitrate this issue, must be decided by an arbitrator.

*Id.* at 5-6.

The Second Circuit has "repeatedly found that non-signatories to an arbitration agreement may be bound according to 'ordinary principles of contract and agency.'" *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l. Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir. 1980)); *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996) ("[T]he Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation.")

With respect to Defendant Danny Bensusan, Plaintiffs allege that he was "an officer and owner of …Greenwich Village Entertainment Group LLC." Complaint ¶ 17. With respect to Defendant Steven Bensusan, Plaintiffs allege that he was "the president and owner of …Greenwich Village Entertainment Group LLC." Complaint ¶ 18. Plaintiffs further allege that both individual Defendants "exercised control over the terms and conditions of Plaintiffs employment" and that they "had the power to (i) fire and hire, (ii) determine rate and method of pay and (iii) otherwise affect the quality of employment."  Complaint ¶¶ 19-20.  As such, Defendants Danny and Steven Bensusan are so intertwined with Greenwich Village Entertainment Group LLC as to be able to avail themselves of the arbitration agreement.

In a case similar to *Dhue v. O'Reilly*, the Court in *Tantaros v. Fox News Network, LLC, et al.*, Index No. 157054/2016 (Sup. Ct. N.Y. Cty. February 15, 2017) held in an oral opinion that:

> At this point in time I'm going to render my decision on the record. Plaintiff's employment at Fox was covered by an employment agreement that contained a valid, broad and unambiguous arbitration provision requiring that any controversy, claim or dispute arising out of or relating to this agreement or your employment shall be brought before a mutually selected three member arbitration panel. Ample case law in both New York State and the Federal Courts has held that all the claims and controversies sought to be litigated by plaintiff fall within the terms of the parties broad arbitration provision including her claims under the New York State Human Law for harassment and retaliation, as well as her claims for tortious interference, since those claims arose within the scope of plaintiff's employment and clearly fall within that scope.
>
> All of the individual defendants, though they are not signatories to the arbitration agreement, can invoke the arbitration clause and compel arbitration. This would apply even if the claims against them were severed from the claims against Fox. The misconduct alleged by plaintiff relates to these individual's behavior as officers, directors and employees or agents of Fox, and they necessarily relate to their alleged conduct as agents of Fox News. Further, a careful review of the claims against the individual defendants shows that these claims are factually intertwined with the agreement and the claims against Fox News. The claims against the individual defendants involve the very same issues and circumstances. This principle applies equally to the employment claims and the tortious interference claims at issue in this case. Allowing such claims to proceed in court would be contrary to established public policy strongly favoring arbitration of such disputes.

*Id.* at 36-37.

Accordingly, a signatory to an arbitration agreement can be compelled to arbitrate claims with a nonsignatory "where a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Merrill Lynch Intl. Fin., Inc. v. Donaldson*, 27 Misc. 3d 391, 396 (Sup. Ct. N.Y. Cty. 2010) (quotations and citations omitted); s*ee also Ragone v. Atlantic Video*, 595 F.3d 115, 126-27 (2d Cir. 2010) ("[u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where …

11

the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and where there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.") (quotations and citations omitted).  As such, all the claims should be compelled to arbitration, including those against non-signatories to the Consent to Arbitration.

### III.    IN ANY EVENT, WHETHER THE CONSENT TO ARBITRATION APPLIES TO THE PLAINTIFFS IS A QUESTION FOR THE ARBITRATOR

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility Inc.*, 563 U.S. at 339. In interpreting the mandates of the FAA, courts are required to "enforce arbitration agreements according to their terms."  *Henry Schein Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019). To the extent there is any ambiguity in the applicability of arbitration agreements, such as the Consent to Arbitration in this case, it is well settled that matters involving contract interpretation and arbitral procedure are for the arbitrator to decide, not the court. *Duran v. J. Hass Grp., L.L.C.,* 531 F. App'x 146, 147 (2d Cir. 2013) (citing *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 453 (2003)). This is particularly true where, as here, the agreement is susceptible of an interpretation that covers the dispute.

As the Supreme Court has explained, parties are free to "agree to have an arbitrator decide . . . 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein,* 139 S. Ct. at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); some internal quotation marks omitted).  Although it may be presumed that parties leave arbitrability questions

to courts, that presumption may be overcome through "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. *First Options of Chi., Inc.*, 514 U.S. at 944; *see Lowry v. JPMorgan Chase Bank, N.A.* 522 F. App'x 281, 283 (6th Cir. 2013); *Bell*, 293 F.3d at 566.  One way parties may provide that clear and unmistakable evidence is by including a "delegation provision" in their contract that clearly assigns arbitrability questions to an arbitrator.  *Rent-A-Center,* 561 U.S. at 68-70. In *Henry Schein*, the Supreme Court recently clarified that consistent with the FAA and Supreme Court precedent, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless," where "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." 139 S. Ct. at 529-530. The FAA "leaves no place for the exercise of discretion."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, "[w]hen the parties' contract delegates the threshold arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue," but "must respect the parties' decision as embodied in the contract." *Henry Schein,* 139 S. Ct. at 529.

The Consent to Arbitration states that "the arbitrator will be required to administer the arbitration pursuant to the [Employment Arbitration Rules and Mediation Procedures] Rules of the AAA . . ." Bensusan Affidavit ¶ 5, Ex. A at p. 14-15. This language furnishes clear and unmistakable evidence that an arbitrator, not a court, is to address this current dispute, including whether both Plaintiffs are subject to arbitration.

The AAA's Employment Arbitration Rules and Mediation Procedures specifically provide in Rule 6 that the arbitrator decides questions of arbitrability:

> a.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

      b.   The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

      c.   A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that give rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

Kirschner Decl. ¶ 4, Ex. B at p. 17.

Even if the Plaintiffs challenge the applicability of the Consent to Arbitration to certain individuals, or challenge its mutual acceptance by all parties, courts must "leav[e] any challenge to the validity of the [arbitration] [a]greement as a whole for the arbitrator" – including any objection that applies "equally" to the delegation provision itself. *Rent-A-Center*, 561 U.S. at 72 (holding that courts must give effect to a delegation provision even if the parties did not validly agree to the contract of which that delegation provision is a part).  "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70-71.

The Rules of the AAA vest the arbitrator with the authority to determine the gateway question of arbitrability. Courts have held that where, as here, parties explicitly incorporate the AAA Rules into the agreement, the incorporation serves as "clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp.*, 398 F.3d at 208; *see also T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F 3d. 329, 343-45 (2d Cir. 2010). In light of well-established and recent court precedents, the Court must enforce the Consent to Arbitration in this case, where the agreement clearly and unmistakably delegates questions of arbitrtaibility to the arbitrator. *See Henry Schein*, 139 S. Ct. at 531. Therefore, the arbitrator should be responsible for deciding any jurisdiction-related disputes between the parties.

14

## IV.     THE COURT SHOULD STAY THIS ACTION

Once it is determined that the matter is subject to mandatory arbitration, under federal and New York law, courts must stay the litigation. *See Koob v. IDS Fin. Servs., Inc.,* 629 N.Y.S.2d 426, 431 (1st Dep't 1995) (a court's granting a motion to compel arbitration "operates 'to stay a pending or subsequent action'") (quoting N.Y. C.P.L.R. §7503(a) (McKinney)); *see also Siegel, Prac. Comments,* McKinney's Cons Laws of NY, Book 7B, CPLR C3211:21, at 39 ("When [a party seeks] to preclude litigation of the instant dispute on the ground that there is outstanding an unfulfilled obligation to arbitrate it, the remedy is a motion to compel arbitration under N.Y. CPLR 7503(a), which stays the litigation in deference to arbitration."). Therefore, the court "shall," once "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement[,] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also AT&T Mobility LLC,* 563 U.S. at 344 (" § 3 [of the FAA] requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement); *Katz v. Cellco P'ship,* 794 F.3d 341, 346-47 (2d Cir. 2015) (mandatory stay of proceedings after all claims are referred to arbitration, pursuant to a binding arbitration agreement, comports with the FAA's statutory scheme); *McMahan Sec. Co. L.P. v. Forum Cap. Mkts. L.P.,* 35 F.3d 82, 85-86 (2d Cir. 1994) ("Under the Federal Arbitration Act, a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. The FAA leaves no discretion with the district court in the matter.").

Where, as here, the arbitration provision is valid and the Plaintiffs' claims fall within the scope of the Consent to Arbitration, the Court should compel arbitration and stay this action.

## <u>CONCLUSION</u>

For all the foregoing reasons, this Court should grant the Motion to Compel and Stay the

Action and provide such other and further relief including reasonable costs and attorney's fees.

Dated: New York, New York
May 31, 2019

Respectfully submitted,

By: /s/ Kenneth Kirschner
Kenneth Kirschner, Esq.

HOGAN LOVELLS US LLP
    Attorneys for DANNY BENSUSAN,
    STEVE BENSUSAN, and
    GREENWICH VILLAGE
    ENTERTAINMENT GROUP LLC
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100