USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ORLANDO GARCIA GIL and GUSTAVO
MARTINEZ,

                                    Plaintiffs,                  18-CV-10657 (VEC)

              -against-                                OPINION AND ORDER

DANNY BENSUSAN, STEVE BENSUSAN, and
GREENWICH VILLAGE ENTERTAINMENT
GROUP LLC;

                                  Defendants.
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiffs Gil and Martinez bring this action against their former employer alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* *See* Compl., Dkt. 1. Defendants move to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et seq.*, and to stay the action. *See* Notice of Mot., Dkt. 17. For the following reasons, Defendants' motion to compel is GRANTED. This action is STAYED pending arbitration.

## BACKGROUND

       Defendants Danny Bensusan and Steve Bensusan are the owners of Defendant, Greenwich Village Entertainment Group LLC ("Greenwich Village Entertainment"). Compl. ¶¶ 17-18. Greenwich Village Entertainment owned and operated the Highline Ballroom, a concert venue and nightclub, that closed in February 2019. Bensusan Aff. ¶¶ 1, 10. Plaintiffs Gil and

Martinez were employed as porters and janitors at the Highline Ballroom from January 2008 to July 15, 2018. *See* Gil Aff. ¶¶ 2-3; Martinez Aff. ¶¶ 2-3.

Plaintiff Gil executed an "Employee Acknowledgment Form" with the Highline Ballroom on July 10, 2010, acknowledging that it was his "responsibility to read and comply with the policies contained in [the] handbook." *See* Bensusan Aff., Ex. B. Gil also signed an "Acknowledgment of Receipt of Employee Handbook and Consent to Arbitration" form. *See* Bensusan Aff., Ex. C. The Consent to Arbitration form states that Gil "received and read the Consent to Arbitration which is found in [the employee] Handbook, and [that he] knowingly and voluntarily agree[s] to the obligations set forth therein." *Id.* The Consent to Arbitration section of the Employee Handbook states that employees "agree to arbitrate all claims that Employee or the Company [] may have in connection with employee's employment with the company" before an impartial arbitrator pursuant to the Employment Arbitration rules and Mediation procedures of the American Arbitration Association ("AAA"). *See* Bensusan Aff., Ex. A at 14-15. The Agreement also notes in capitalized and bolded print that the "mutual obligation to arbitrate means that employee and the company are voluntarily giving up the opportunity to have a judge or jury determine any such disputes in a formal proceeding." *Id.* at 14. Although Gil signed both forms, he asserts that he never received the Employee Handbook and did not understand the arbitration policy. *See* Gil Aff. ¶¶ 6-7, 15-17.

As to Plaintiff Martinez, the parties dispute whether he ever signed the Employee Acknowledgment form or the Consent to Arbitration form. Martinez states that he never received or signed either form. *See* Martinez Aff. ¶ 7. Defendants assert that Martinez did sign the forms but that his signed forms cannot be located due to the closing of the Highline Ballroom. *See* Bensusan Aff., ¶ 10. Defendants maintain that the company's standard operating

procedure was to provide all employees with the Handbook and Consent Form and to require them to sign the forms before beginning work. *Id.* ¶¶ 7-9, 11.

Plaintiffs filed this lawsuit on November 15, 2018, alleging that Defendants failed to pay them required overtime wages and failed to provide them with the required wage statements. Compl. ¶¶ 31-32.

## DISCUSSION

### I. Defendants' Motion to Compel Arbitration Is Granted

Plaintiffs argue that they never agreed to arbitrate their claims against Defendants. Pl. Mem. of Law at 3-6. Plaintiff Gil argues that he was never provided with the arbitration policy, and he did not understand what arbitration entailed. *Id.* at 5. Plaintiff Martinez argues that he never signed a Consent to Arbitration form and is therefore not bound by any arbitration agreement. *Id.* at 5-6. These arguments fail.

**A. The Applicable Law**

Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "In resolving a claim that an action must be directed to arbitration under an arbitration agreement, [a] [c]ourt must determine: (i) whether the parties entered into an agreement to arbitrate; (ii) if so, the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration."

*Arnold v. D'Amato*, 2015 WL 4503533, at *5 (S.D.N.Y. July 23, 2015) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)).

In deciding a motion to compel arbitration under the FAA, the Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). A motion to compel arbitration may be granted "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013). "All facts, inferences, and ambiguities must be viewed in a light most favorable to the nonmovant." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. Orlando Garcia Gil

#### i. The Parties Agreed to Arbitrate

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). "Under New York law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (citing *Level Exp. Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953)), *aff'd*, 659 F. App'x 40 (2d Cir. 2016).

Here, Plaintiff Gil signed the Consent to Arbitration form, creating a presumption that he understood the terms of the policy and agreed to arbitration. *See* Bensusan Aff., Ex. C; *Patterson*, 96 F. Supp. 3d at 76. Nonetheless, Plaintiff argues that the agreement is unenforceable because he allegedly never received the actual arbitration agreement and he did

not understand what arbitration entailed.  *See* Pl.'s Mem. of Law at 2-5; Gil Aff. ¶¶ 6-7, 15-16.  Both arguments are unavailing.

Courts have "routinely upheld arbitration agreements contained in employee handbooks where [] the employee has signed an acknowledgment form."  *Chanchani v. Salomon/Smith Barney, Inc.*, 2001 WL 204214, *3 (S.D.N.Y. Mar. 1, 2001); *see also Beletsis v. Credit Suisse First Boston Corp.*, 2002 WL 2031610, *3 (S.D.N.Y. Sep. 4, 2002) (holding that the parties agreed to arbitrate because the employee signed the "Compliance Certification" that referred to the employer's arbitration program); *Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) ("[T]he parties' agreement to arbitrate is evidenced by the Employee Handbook and the Acknowledgment signed by plaintiff.").  Thus, because Gil signed an Acknowledgment form stating not only that he received the employee hndbook, but also that he "received and read" the Consent to Arbitration policy found within it, Gil's argument that he did not receive either the handbook or the arbitration policy fails.  *See* Bensusan Aff., Ex. C.

Gil's argument that he did not understand the arbitration policy also fails.  Under New York Law, a party will "not be excused from his failure to read and understand the contents" of a document.  *Victorio v. Sammy's Fishbox Realty Co., LLC,* 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015).  A party is "under an obligation to read a document before he [] signs it, and [] cannot generally avoid the effect of a [document] on the ground that he [] did not read it or know its contents."  *Marciano v. DCH Auto Grp.,* 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (internal citation omitted).  Moreover, the Second Circuit has held that an employee's continued employment after being advised that it was his responsibility to read and understand the company policy constitutes acceptance of an arbitration policy.  *Brown v. St. Paul Travelers Companies, Inc.,* 331 F. App'x 68 (2d Cir. 2009).

Here, Gil signed a consent form expressly stating that he had received, read, and voluntarily consented to the arbitration policy contained in the handbook. *See* Bensusan Aff. Ex. C. Although Gil now claims he never understood the policy, he is "not excused from his failure to read and understand" it. *Victorio*, 2015 WL 2152703, at *11. This is particularly so because there is no indication that Plaintiff made any effort to have the policy explained to him at any point over the course of his ten-year employment with Defendants. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (explaining that Plaintiff had a duty "of making a reasonable effort to have the document explained to him" if he did not understand its contents). Gil's continued employment and failure to request clarification after signing the Consent to Arbitration form constitutes acceptance of the arbitration policy. *See Brown,* 331 F. App'x at 68.

### ii. The Pagination on the Signature Page Does Not Invalidate the Agreement

A contract may be unenforceable when a party switches or adds a signature page without permission of the other party. *Winston v. Mediafare Entertainment Corp*., 777 F. 2d 78, 83 (2d Cir. 1985). Here, Plaintiff alleges that the arbitration agreement is unenforceable because his signed Consent to Arbitration form is marked as page 5, while the form contained in the employee handbook is marked as page 6. Pl. Mem. of Law at 8; s*ee* Bensusan Aff., Ex. A, C.

Plaintiff seeks to extend *Winston* far beyond its scope. In *Winston*, the plaintiff took an executed signature page from the third draft of a settlement agreement and attached it to the fourth draft without the defendants' permission. *Winston*, 777 F. 2d at 83. The fourth draft of the agreement included changes from the previous version and was, therefore, a "new document." Under those circumstances, "plaintiff had no right to switch signature pages" without the counter-party's permission. *Id.* Here, Plaintiff's only allegation is that the page

number on his signed Consent Agreement is inconsistent with the page number on the blank form included in the employee handbook. *See* Pl. Mem. of Law at 8. Plaintiff is not asserting, nor does he have any basis to assert, that Defendants have added to or changed any aspect of Plaintiff's signed form. Defendants explain that the discrepancy in pagination results from subsequent revisions of the handbook. Bensusan Aff. ¶ 5. Not only has Plaintiff failed to offer any evidence to rebut this explanation, but he has failed to assert any substantive differences between the form he signed and the form in the handbook. Because there is no evidence that Gil's signed agreement has been altered in any way, the different pagination does not render the agreement unenforceable.

For all these reasons, the Court finds that Plaintiff Gil's Arbitration Agreement is enforceable.

### C. Gustavo Martinez

#### i. Martinez Had Notice of the Policy

As noted *supra,* Defendants are unable to locate Plaintiff Martinez's signed Consent to Arbitration form due to the closing of the Highline Ballroom and subsequent dispersion of its records. Bensusan Aff. ¶ 10. The Second Circuit has held that even without a signed agreement, an employee's continued employment after receiving notice of an arbitration policy constitutes assent to such an agreement. *Manigault v. Macy's East, LLC,* 318 F. App'x 6, 8 (2d Cir. 2009). Plaintiff Martinez contends that there is no agreement because he never signed a consent form and he never received notice of the policy. Martinez Aff. ¶¶ 7-8. The Court finds that

Plaintiff's notice of the arbitration policy is presumed, and the agreement is, accordingly, enforceable.

Under New York law, when "there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly [provided], a presumption arises that notice was received." *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985); *Manigault,* 318 F. App'x at 7. Notice may also be presumed when there is evidence that the employer sent the policy through email or when the employee was told that it was their responsibility to read the policy. *Brown,* 331 F. App'x at 69; *see also McAllister v. East*, 611 F. App'x 17 (2d Cir. 2015); *Patterson*, 96 F. Supp. 3d at 76. Once there is a presumption of notice, the mere "denial of receipt [of notice] does not rebut that presumption." *Meckel* 758 F.2d at 817; *Manigault,* 318 F. App'x at 7. Instead, there "must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed" so that the presumption of notice becomes unreasonable. *Meckel*, 758 F.2d at 817*; see Manigault* (holding that an employee's mere "denial of receipt" of notice of the dispute resolution program was insufficient to rebut the presumption that notice was given).

Here, "as a condition of employment with Greenwich Village Entertainment Group, all employees were required to review the Employee Handbook and Consent to Arbitration and sign [copies] of an Acknowledgement of Receipt of Employee Handbook and Consent to Arbitration." Bensusan Aff. ¶ 3. Further, Bensusan asserts that "in the course of hiring, every Greenwich Village employee [] was given the Handbook, asked to read and sign the relevant provisions, and would have been provided another at any time." Bensusan Aff. ¶ 4. This practice constitutes standard office procedure sufficient to establish a presumption of notice. Although Defendants' procedure did not involve mailing or emailing the handbook or arbitration

8

policy to employees, this Court has explained that "*Manigault* and *Brown* did not turn on a particular degree of notice or the format in which it was given." *Patterson*, 96 F. Supp. 3d at 77. Instead, "for contract formation purposes, these cases simply require continued employment after notice of the handbook's terms, without specifying any particular form of required notice." *Id.* Thus, Defendants' standard procedure of manually delivering employee handbooks during the hiring process and orally directing employees to read and sign a Consent to Arbitration form as a condition of employment, creates a presumption that notice of the arbitration policy was given to every employee. Because Martinez has not offered any evidence, beyond his own denial of receipt, to rebut this presumption or to suggest that Defendants did not follow their standard procedure, Martinez has failed to rebut the presumption of notice. *See Manigault,* 318 F. App'x at 7.

## ii. Martinez's Continued Employment Manifests Assent to the Agreement

Once an employee has notice of an arbitration policy, "continued employment, without more, is sufficient to manifest assent" to the policy. *Manigault*, 318 F. App'x at 8; *Chanchani*, 2001 WL 204214 at * 3 (employee was bound by arbitration provisions in an employee handbook, even if he did not sign a receipt form, because he continued to work after promulgation of the handbook and never objected to its terms); *Patterson,* 96 F. Supp. 3d at 76 (explaining that by continuing to work after receiving notice of the policy, Plaintiff agreed to the terms of the arbitration program); *Gonzalez v. Toscorp Inc.*, 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999) (employee who received the policy and handbook and continued employment was bound by an arbitration agreement even though he did not sign acknowledgment of receipt). Here, Martinez worked for Defendants for ten years after receiving notice of the arbitration

9

policy. Thus, Martinez's continued employment, even without a signed acknowledgment form, manifests assent to the arbitration agreement.[1]

Because Defendants' standard procedure establishes a presumption of notice that Martinez has failed to rebut, Plaintiff's continued employment for ten years after receiving such notice constitutes assent to the arbitration policy. Accordingly, the arbitration agreement is enforceable.

## II. This Action Is Stayed Pending Arbitration

A court must stay proceedings "when all of the claims in an action have been referred to arbitration and a stay [has been] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Here, Defendants have requested a stay. *See* Defs.' Mem. of Law, Dkt. 18. Accordingly, a stay of this Court's proceedings pending arbitration is warranted.

## CONCLUSION

For all the foregoing reasons, the Court GRANTS Defendants' motion to compel arbitration. This action is STAYED pending arbitration. The parties must submit joint quarterly updates on the status of the arbitration proceeding. The first such update is due **March 1, 2020**. Subsequent updates are due every three months, on the first business day of the applicable month.

The Clerk is respectfully directed to close the open motion at Dkt. 17.

**SO ORDERED.**

Date: October 30, 2019  
New York, New York

VALERIE CAPRONI  
United States District Judge

---

[1] Plaintiff Martinez's claim that the agreement is unenforceable because he did not understand what arbitration entailed, Martinez Aff. ¶ 6, fails for the same reasons Plaintiff Gil's identical argument fails. *See supra* Section I(B)(i).